**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| TIANA JANAE STEWART,<br>6903 Gateway Blvd<br>District Heights, Maryland 20747 | : : : : | |
| Plaintiff, | : : : | Civil Action No. 8:20-cv-3409 |
| v. | : : : | |
| PHH MORTGAGE CORPORATION,<br>CSC-Lawyers Incorporating Service<br>7 St. Paul Street, Suite 820<br>Baltimore, Maryland 21202 | : : : : : : : | |
| and | : : : | |
| PLAZA HOME MORTGAGE, INC.<br>CSC-Lawyers Incorporating Service<br>7 St. Paul Street, Suite 820<br>Baltimore, Maryland 21202 | : : : : : : | |
| Defendants. | : : | |

**COMPLAINT**

COMES NOW Plaintiff, Tiana Janae Stewart ("Plaintiff"), by counsel, and files this Complaint against PHH Mortgage Corporation ("PHH Mortgage") and Plaza Home Mortgage, Inc. ("Plaza Home Mortgage"). Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1.  This case demonstrates that, as the entities that perform the day-to-day management of loans, "servicers can have a direct and profound impact on borrowers."[1] Here, Plaintiff is

---

[1] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024).

threatened by the foreclosure of her home despite being granted a permanent home loan modification and making her payment each month.

2. It appears that because of a typo in the spelling of Plaintiff's name on the Deed for her home, Defendants have refused to accept Plaintiff's executed Modification Agreement on three separate occasions. This is despite Plaintiff following Defendants' instructions for executing the agreement each time.

3. Instead of resolving the typo through meaningful action, *e.g.*, a signed explanation from Plaintiff confirming the typo, Defendants have instead chosen to send her nonexplanatory form letters repeatedly asking her to make the same mistake. If Plaintiff was able to continue this pattern during the COVID pandemic, it appears that Plaintiff would have been re-notarizing the Modification Agreement into perpetuity, or at least until she paid off the loan.

4. A homeowner should not have to file a lawsuit to file such a servicer's error. Indeed, Congress enacted the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, in part, to protect consumers from the type of abusive and inaccurate servicing practices used by the servicer of Plaintiff's home loan. Consistent with its consumer protection purposes, RESPA imposes mandatory duties on mortgage servicers, including specific requirements related to the transfer of servicing of the loans and the correction of errors. 12 U.S.C. § 2605.

5. Plaintiff alleges claims against PHH Mortgage for its numerous violations related to its duties under RESPA, 12 U.S.C. § 2605. RESPA provides for actual damages, statutory damages, costs, and attorney's fees for violations of certain mortgage servicer duties. The imposition of civil liability on servicers for the damage caused by their violations of the requirements of RESPA is essential to achieve the consumer protection purposes of RESPA because home mortgage servicers are incentivized "to look for opportunities to impose fees on

borrowers to enhance revenues."[2] Indeed, this case exemplifies the type of far reaching consequences noncompliance with RESPA can have on a homeowner. Here, PHH Mortgage has profited from assessing late fees to Plaintiff's account, while reporting derogatory and inaccurate information concerning her to the credit bureaus.

6. Additionally, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, provides additional protections to consumers that are designed to protect the furnishing of derogatory, erroneous information by their mortgage servicer by imposing further investigative duties on servicers after the homeowner disputes the inaccuracy with the credit bureaus. 15 U.S.C. § 1681s-2(b)(1).

7. Accordingly, Plaintiff also alleges FCRA claims for PHH Mortgage's failure: to fully and properly investigate her disputes, to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, and to appropriately mark her account as disputed.

8. Plaintiff also alleges breach of contract claims against PHH Mortgage and Plaza Home Mortgage for their refusal to permanently modify her loan despite Plaintiff's successful completion of the Trial Period Plan and proper execution of the Modification Agreement as instructed.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1681(p).

---

[2] *Id.*

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and LR 504(4)(b)(ii) because Plaintiff—the only Maryland resident—resides in this District and Division and a substantial part of the events giving rise to her claims occurred in this District.

## PARTIES

11. Plaintiff Tiana Janae Stewart is a natural person.

12. Defendant PHH Mortgage Corporation is a foreign corporation with a principal place of business in New Jersey. PHH Mortgage provides mortgage services in Maryland using the trade name PHH Mortgage Services.

13. Defendant Plaza Home Mortgage, Inc., is a foreign corporation with a principal place of business in San Diego, California.

## FACTS

### *Plaintiff's Home Mortgage*

14. This case concerns Plaintiff's FHA mortgage loan on her home in District Heights.

15. Plaintiff purchased her home on July 14, 2017.

16. Plaintiff's full legal name is Tiana Janae Stewart.

17. Thus, the Deed of Trust for her loan, defines "Borrower" as "Tiana J. Stewart", and Plaintiff signed the Deed of Trust using her name, "Tiana J. Stewart".

18. Similarly, Plaintiff signed the Note for her home loan using her name, "Tiana J. Stewart." And, the Maryland Written Acknowledgment of Delivery of the Note identifies the "Borrower" as "Tiana J. Stewart", and Plaintiff signed it using her name, "Tiana J. Stewart."

19. However, the Special Warranty Deed includes an obvious typo of placing an extra "t" at the end of Plaintiff's last name. Thus, it states that the Grantee is "Tiana J. Stewartt" instead of "Tiana J. Stewart."

20. It is obvious on the face of the document that this is a typo as it also says to mail tax statements to "Tiana Stewart" and that the deed would be recorded under the names "Ventures/Stewart."

21. Plaintiff has never used by or gone by the name "Stewartt."

22. Plaintiff was unaware of the typo in the Special Warranty Deed, and from the time she took out the loan, all correspondence has been sent to her using her name "Tiana J. Stewart."

*Plaintiff's Financial Hardship*
*and Trial Period Plan Agreement*

23. PHH Mortgage took over the servicing of her home loan in November 2018 and has directed all statements and other correspondence to her using her name, Tiana J. Stewart.

24. Around the time PHH Mortgage took over the account, two escrow analyses were conducted for Plaintiff's mortgage, which caused an increase in her monthly mortgage payment.

25. Due to this increase, Plaintiff was no longer able to make her monthly mortgage payments despite being employed, wanting to make her monthly payments, and doing everything in her power to continue to make her monthly payments while meeting her other basic needs.

26. In or around June 2019, Plaintiff requested a loan modification from PHH Mortgage, indicating that it was her primary objective to keep her home and continue to make payments.

27. By an offer letter dated August 19, 2019, Plaza Home Mortgage offered Plaintiff a Trial Period Plan.

28. "To accept the Trial Period Plan," the letter directed Plaintiff to sign and return the Trial Period Plan Terms and to make her first monthly trial period plan on or before October 1, 2019.

29. The August 19, 2019 correspondence further provided, "After all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified."

30. Plaintiff timely returned the signed Trial Period Plan Terms and made all payments as directed in the offer letter.

### *Plaintiff's Permanent Modification*

31. Because Plaintiff successfully completed the Trial Period Plan, Plaza Home Mortgage offered her a Home Affordable Modification, promising to "modify your mortgage loan and waive all prior late charges that remain unpaid."

32. The offer of the Home Affordable Modification specifically directed that "[a]ll of the documents must be executed and signatures must be exactly as the names are typed."

33. Plaintiff followed the instructions for acceptance of the offer and executed the documents "exactly as the names [were] typed" on the agreement before a notary public.

34. Plaintiff also began making payments in accordance with the Permanent Modification Agreement, and PHH Mortgage accepted her modified payments for February 2020, March 2020, and April 2020 in accordance with the Home Affordable Modification Agreement.

35. Even though Plaintiff executed the agreement as directed and without any mistake or error, Plaza Home Mortgage attempted to reject the agreement by purporting to identify "defects in the agreement." Plaintiff later learned that this "defect" was that the agreement did not list her name as "Stewartt," but at the time, the denial included no explanation for why her signature was not acceptable.

36. Plaza Home Mortgage sent Plaintiff a new Home Affordable Modification Agreement in early March 2020, which Plaintiff timely executed as directed.

37. However, again, Plaza Home Mortgage attempted to reject the agreement by purporting to identify "defects in the agreement" related to Plaintiff's signature. Plaintiff later learned that this "defect" was that the agreement did not list her name as "Stewartt," but at the time, the denial included no explanation for why her signature was not acceptable.

38. Plaza Home Mortgage sent Plaintiff a new Home Affordable Modification Agreement in late March 2020 and indicated that the notarized agreement needed to be received by April 12, 2020.

39. At this time, the COVID-19 pandemic was ongoing, and Plaintiff, who was in a high-risk group and pregnant, was unable to have the Home Affordable Modification Agreement notarized for a third time prior to the deadline.

40. Plaintiff contacted PHH Mortgage regarding her inability to timely have the agreement notarized because of shutdowns associated with the COVID-19 pandemic and informed PHH Mortgage that she needed an additional two weeks to submit the third agreement.

41. Plaintiff continued to make her modified monthly mortgage payments, and PHH Mortgage accepted her May 2020 and June 2020 payments in accordance with the Home Affordable Modification Agreement.

42. After accepting her modified June 2020 payment in accordance with the Home Affordable Modification Agreement, Plaza Home Mortgage sent Plaintiff a letter dated June 17, 2020 claiming that she was "no longer eligible for the loan modification" because she "failed to return the corrected final modification agreement within the required timeframe."

43. After receiving this letter, Plaintiff contacted PHH Mortgage for resolution of the apparent misunderstanding regarding her account and the Modification Agreement.

44. On or around July 12, 2020, Plaintiff was informed by a PHH Mortgage representative that she could resolve the misunderstanding regarding the Modification Agreement by sending two checks to PHH Mortgage (one for $14 and one for her modified payment) and by sending in the executed Modification Agreement. PHH Mortgage confirmed this in writing.

45. Plaintiff promptly sent PHH Mortgage the two checks and executed Modification Agreement as directed, but PHH subsequently refused to accept the checks and returned them to her by letters dated July 21, 2020.

46. Plaintiff made her August payment to PHH Mortgage, which PHH Mortgage refused to accept and credit to her account.

47. Because PHH Mortgage has refused to accept Plaintiff's payments, it has been assessing late charges to her account.

### *Plaintiff Attempts to Correct The Errors in Her Account*

48. By a letter dated August 13, 2020, Plaintiff submitted notices of error and requests for information to PHH Mortgage regarding the errors in her account and misunderstanding regarding her Modification Agreement.

49. Her letter explained that her loan had been permanently modified, that she was making payments under the Modification Agreement, and that she had submitted her executed Modification Agreement three times.

50. Her letter explained that her name was Tiana Stewart and explained that her signature could not match the misspelled name.

51. Plaintiff also explained that a PHH Mortgage representative had informed that she could remedy the situation by sending in two checks, which she did; however, PHH Mortgage refused to accept her payment upon receipt.

52. Plaintiff requested that PHH Mortgage cease all negative credit reporting for any payments from October 2019 through the present.

53. Additionally, Plaintiff requested information to help her identify any additional errors on her account, including: the servicing notes for her loan file from January 1, 2019 through the present; the signed permanent modification agreements that PHH Mortgage claims were unacceptable; any documentation that indicates Plaintiff's name is "Stewartt"; an itemized list of all past due amounts; an explanation of "Total New Fees and Charges" on her statement; any invoices or receipts from charges to her account; information related to any default related fees on her account; and the transaction codes used by PHH Mortgage's electronic servicing system so that she could read the information provided.

54. Plaintiff requested that PHH Mortgage contact her if it needed any further information regarding her correspondence.

55. PHH Mortgage never attempted to contact Plaintiff regarding her notices of error and requests for information.

56. By a letter dated September 14, 2020, PHH Mortgage responded to Plaintiff's August 13, 2020 letter, stating that "no error occurred" on Plaintiff's account.

57. The letter states that PHH Mortgage is "currently experiencing high call volumes due to COVID-19 pandemic" and that, "Your understanding is appreciated."

58. PHH Mortgage's letter confirms that Plaintiff was "approved the modification agreement."

59. It states that she was initially denied because she "failed to return the corrected final Modification Agreement within the required timeframe." But, it did not address the first two modification agreements that she sent on time.

9

60. Additionally, with respect to the two checks and executed modification agreement that Plaintiff sent in July, the letter explains that PHH Mortgage did not reverse the modification denial because she did not execute the agreement using the name "Stewartt."

61. Attached to the letter was a copy of the Special Warranty Deed for Plaintiff's home.

62. The letter did not include the servicing notes from Plaintiff's file and provided no explanation for the absence of the information.

63. The letter did not include the signed loan Modification Agreement that was not accepted, and PHH provided no explanation for the absence of the requested information.

64. On or around September 24, 2020, Plaintiff sent a follow up letter to PHH Mortgage attempting to remedy PHH Mortgage's errors and requesting further information.

65. Plaintiff's letter explained that she should not be in default on her loan because her loan had been permanently modified, that her name was spelled Stewart, and that she would never be able to provide a notarized signature with the misspelled name.

66. Plaintiff requested that PHH Mortgage correct her account to show that she was current, that her loan had been permanently modified, to correctly apply her payments, and to remove any late charges from her account.

67. Plaintiff specifically requested that PHH Mortgage send her a copy of the signed Home Affordable Modification Agreement that she executed in February 2020.

68. Plaintiff requested a copy of the title report and any other information that PHH Mortgage considered in relation to her modification applications.

69. Plaintiff requested all of the servicing notes from her loan file from January 1, 2019 through the present.

70. Plaintiff requested any recordings or notes regarding any calls between her and a PHH representative from July 2020.

71. Plaintiff requested detailed information regarding any late charges or default related fees assessed to her account.

72. Plaintiff closed her letter by stating that PHH Mortgage could contact her if she could provide any further information to assist their investigation into her notices of error and requests for information.

73. No one from PHH Mortgage ever contacted Plaintiff as a part of any investigation into the errors on her account.

74. PHH Mortgage responded by a letter dated October 5, 2020. PHH's Mortgage is largely duplicative of its first letter and offers no resolution with respect to Plaintiff's inability to execute the documents before a notary public using her misspelled name "Stewartt."

75. PHH Mortgage failed to make any appropriate corrections in response to her letter.

76. PHH Mortgage refused to provide Plaintiff a signed copy of the Home Affordable Modification Agreement that she signed in February 2020 and returned to PHH Mortgage. PHH Mortgage failed to provide a plausible explanation for its unavailability, stating only that there was no such agreement: "[T]here was no modification completed in February 2020. Therefore, we are unable to provide any Modification Agreement for the same."

77. PHH Mortgage also refused to provide a copy of the Title Report and any other information related to Title that was considered for her modification applications, stating only, "Further, the title is now cleared for this property." Plaintiff does not know what PHH Mortgage meant for this statement, but it is clearly not an explanation for why the requested information is unavailable.

78. PHH Mortgage also failed to provide the call recordings or any call notes related to Plaintiff's conversation with the PHH Mortgage representative in July 2020, stating that such notes and call recordings are "for our internal purposes only."

### *Inaccurate Reporting on Plaintiff's Credit Reports*

79. Plaintiff's PHH Mortgage account was also reported as past due on her credit reports.

80. Plaintiff disputed the PHH Mortgage account with the three major credit reporting agencies—Trans Union, Equifax, and Experian.

81. She disputed the account with each agency multiple times, including in August 2020 and October 2020.

82. Plaintiff attached proof that she paid each disputed payment to her disputes, explained that her loan had been permanently modified, and explained that PHH Mortgage repeatedly denied her executed modification based on a mistake related to the spelling of her name.

83. Upon information and belief, the consumer reporting agencies forwarded Plaintiff's disputes to PHH Mortgage.

84. In spite of Plaintiff's disputes and the supporting information attached to the disputes, PHH Mortgage refused to remove the inaccurate, derogatory information from Plaintiff's credit reports.

85. PHH Mortgage continued to furnish the inaccurate, derogatory information to the credit bureaus.

86. Upon information and belief, PHH Mortgage conducted no investigation into Plaintiff's disputes and confirmed the erroneous reporting without contacting Plaintiff or investigating the issue with the spelling of her name.

87.     PHH Mortgage continued to report the disputed information during the 60-day time period after it received Plaintiff's notices of errors and requests for information.

## COUNT ONE:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)
### (PHH MORTGAGE)

88.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

89.     As alleged, Plaintiff submitted qualified written requests to PHH Mortgage, and PHH Mortgage received each request.

90.     PHH Mortgage violated 12 U.S.C. § 2605(e)(2) on multiple occasions, including failing to conduct an adequate investigation in responding to Plaintiff's qualified written requests; failing to provide any explanation for how Plaintiff could ever be expected to execute the Modification Agreement documents using a name other than her own; failing to make appropriate corrections to her account, including the status of her loan as modified and correctly allocating payments; failing to provide information requested by Plaintiff; and failing to provide any explanation for the absence of information requested by Plaintiff.

91.     As a result of PHH Mortgage's conduct, Plaintiff suffered concrete and particularized harm, including: the incurring of unnecessary fees and interest on her mortgage account, derogatory credit reporting, and emotional distress, including aggravation and stress from the threatened foreclosure of her home.

92.     Upon information and belief and based on PHH Mortgage's repeated violations, PHH Mortgage's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

93. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from PHH Mortgage for each of its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

### COUNT TWO:
### Violation of RESPA, 12 U.S.C. § 2605(e)(3)
### (PHH MORTGAGE)

94. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

95. PHH Mortgage violated 12 U.S.C. § 2605(e)(3) by continuing to provide derogatory information regarding the disputed payments during the 60-day period after PHH Mortgage received Plaintiff's qualified written requests.

96. Because of PHH Mortgage's conduct, Plaintiff suffered concrete and particularized harm, including the reduction of her credit score and emotional distress.

97. Upon information and belief and based in part on PHH Mortgage's conduct as to Plaintiff, PHH Mortgage's noncompliance with 12 U.S.C. § 2605(e)(3) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

98. Upon information and belief, PHH Mortgage does not have a procedure in place to freeze negative payment information when it receives a notice of error challenging the validity of the payment information.

99. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from PHH Mortgage for its violations of 12 U.S.C. § 2605(e)(3) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

## COUNT THREE:
## Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)
## (PHH MORTGAGE)

100. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

101. On one or more occasion within the past two years, by example only and without limitation, PHH Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

102. When Plaintiff disputed her account with the credit bureaus, PHH Mortgage used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (such as PHH Mortgage). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

103. When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

104. Upon information and belief, the ACDV form is the method by which PHH Mortgage has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

105. Upon information and belief, Experian, Equifax, and Trans Union each forwarded Plaintiff's disputes via an ACDV to PHH Mortgage.

106. PHH Mortgage understood the nature of Plaintiff's disputes when it received the ACDV forms.

107. Upon information and belief, when PHH Mortgage received the ACDV forms containing Plaintiff's disputes, PHH Mortgage followed a standard and systematically unlawful process where PHH Mortgage only reviews its own internal computer screen for the account and

repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

108. Upon information and belief, when PHH Mortgage receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

109. As a result of PHH Mortgage's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including loss of credit, damage to reputation, embarrassment, humiliation, stress, and other emotional distress.

110. PHH Mortgage's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, PHH Mortgage was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

111. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from PHH Mortgage in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT FOUR:
### Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (PHH MORTGAGE)

112. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

113. On one or more occasion within the past two years, by example only and without limitation, PHH Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

114. As Plaintiff detailed in the previous Count, PHH Mortgage has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies, including for Experian, Equifax, and Trans Union.

115. PHH Mortgage is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

116. PHH Mortgage does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

117. PHH Mortgage understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

118. As a result of PHH Mortgage's violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

119. PHH Mortgage's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

120. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from PHH Mortgage in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT FIVE:**
**Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**(PHH MORTGAGE)**

121. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

122. On one or more occasion within the past two years, by example and without limitation, PHH Mortgage violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its

representations within Plaintiff's credit files without also including a notation that her account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

123. Specifically, PHH Mortgage failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

124. Upon information and belief, Plaintiff alleges that PHH Mortgage rarely, if ever, added the XB or XC code or other notation that an account was disputed when it responded to ACDV forms.

125. Furthermore, PHH Mortgage knew that Plaintiff disputed the subject account through her dispute letters to the credit reporting agencies.

126. Plaintiff's disputes were bona fide as Plaintiff's account was not past due because she timely made all payments for her mortgage.

127. As a result of PHH Mortgage's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized harm, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

128. PHH Mortgage's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, PHH Mortgage was negligent, entitling Plaintiff to recovery against PHH Mortgage under 15 U.S.C. § 1681o.

129. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from PHH Mortgage in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT SIX:
## BREACH OF CONTRACT
## (PHH MORTGAGE & PLAZA HOME MORTGAGE)

130. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

131. Plaintiff and Plaza Home Mortgage entered into enforceable contracts when they agreed to the Trial Period Plan and the Home Affordable Modification Agreement.

132. Plaintiff complied with all terms of both contracts.

133. Defendants breached both the Trial Period Plan and the Home Affordable Modification Agreement by refusing to accept the executed Modification Agreement, by refusing to accept her modified payments, and by treating her account as past due when she was making timely payments.

134. Defendants failed to act in good faith under the agreement by making it impossible for Plaintiff to execute the agreement and by insisting that she execute the document before a notary public using a misspelled name.

135. Plaintiff is entitled to damages and enforcement of the Trial Period Plan and Home Affordable Modification Agreement, including the permanent modification of her loan and acceptance of her payments.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; enforcement of the Trial Period Plan and Home Affordable Modification Agreement; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**TIANA JANAE STEWART**

By:  <u>*/s/ Kristi C. Kelly*</u>
Kristi C. Kelly, Esq., No. 07244
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
*Counsel for Plaintiff*